# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69766-8-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| | ) | PUBLISHED IN PART |
| RYAN PATRICK MOORE, | ) | OPINION |
| | ) | |
| Appellant. | ) | FILED: February 18, 2014 |
| | ) | |

2014 FEB 18 AM 11: 12

COURT OF APPEALS DIV I
STATE OF WASHINGTON

FILED

APPELWICK, J. — The "to convict" instruction informed the jury that, if it found each element proved beyond a reasonable doubt, it had the duty to convict. This instruction does not violate a defendant's constitutional right to jury trial. It neither misstates the law nor invades the province of the jury. We affirm.

## DISCUSSION

At Ryan Moore's trial,[1] the to convict instruction informed the jury that:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added.) Moore argues that the instruction violated his constitutional right to a jury trial.

We thought that this issue was resolved.[2] Each division of this court has addressed similar challenges to the same instruction Moore contests here. And, in

---

[1] Moore was convicted of bail jumping. The facts are not significant to this issue and are set out in the unpublished section of this opinion.

[2] In fact, this case is only one of many recent appeals making this challenge to the same jury instruction.

each case, the court upheld the instruction. See State v. Meggyesy, 90 Wn. App. 693, 706, 958 P.2d 319 (1998)[3] (Division One); State v. Brown, 130 Wn. App. 767, 771, 124 P.3d 663 (2005) (Division Two); State v. Wilson, 176 Wn. App. 147, 151, 307 P.3d 823 (2013) (Division Three), review denied, ___ Wn.2d ___, 316 P.3d 495 (2014).

In Meggyesy, the appellants argued that a proper instruction informing the jury that it may convict if the State proved all elements of the crime. 90 Wn. App. at 697. We rejected their argument, holding that the trial court is not required to instruct the jury that it may acquit.[4] Id. at 700. Though much of our analysis focused on the impropriety of such an instruction, we explicitly approved the "duty to convict" language and found that it did not misstate the law or invade the province of the jury. Id. at 700-01. We held that neither the federal nor the state constitution prohibits instructing the jury on its duty to convict. Id. at 698.

Brown and Wilson subsequently agreed with Meggyesy, despite the appellants' attempts to distinguish their challenges. Brown argued that he raised a different issue, because he directly challenged the "duty" language, rather than ask the court to instruct the jury that it "may" convict. 130 Wn. App. at 770-71. The Brown court did not find this distinction meaningful: "The Meggyesy court, although addressing a slightly different argument, held that instructing the jury it had a 'duty' to convict if it found the elements

---

[3] abrogated on other grounds by State v. Recuenco, 154 Wn.2d 156, 110 P.3d 188 (2005), reversed by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)

[4] This instruction is also referred to as a jury nullification instruction. See Meggyesy, 90 Wn. App. at 699-700. Jury nullification "occurs when the defendant's guilt is clear beyond a reasonable doubt, but the jury, based on its own sense of justice or fairness, decides to acquit." Andrew D. Leipold, Rethinking Jury Nullification, 82 VA. L. REV. 253 (1996).

were proven beyond a reasonable doubt did not misstate the law." Id. at 771. Wilson argued that, under Washington law, juries never have a duty to convict and that the instruction violated the Washington Constitution. 176 Wn. App. at 150. The court declined to reconsider the issue, noting that the appellant "raises the same challenge as in Brown and uses the same constitutional arguments set forth in Meggyesy." Id. at 151. On January 7, our Supreme Court denied review in Wilson.

Moore does not contest Meggyesy's holding that an instruction on the jury's power to acquit would be improper. Instead, he argues—much like Brown and Wilson—that he raises a distinct issue, because he directly challenges the "duty to convict" language. Moore maintains that the law never requires the jury to find a defendant guilty. Accordingly, he contends that the instruction misstated the law and misled the jury about its power to acquit against the evidence.

By statute, every juror must swear or affirm to uphold and follow the law:

> When the jury has been selected, an oath or affirmation shall be administered to the jurors [that they] will well, and truly try, the matter in issue between the plaintiff and defendant, and a true verdict give, according to the law and evidence as given them on the trial.

RCW 4.44.260.[5] Far from misleading the jury, the challenged instruction tracks the juror's oath. The jury's duty to uphold the law has existed in Washington since the state was a territory. See Hartigan v. Territory, 1 Wash. Terr. 447, 451 (1874). In Hartigan, the court approved the juror's oath, stating that it is the jury's duty to accept the law "as given them by the court." Id. at 449, 451. The court recognized that, if the jury returned

---

[5] "The jury shall be sworn or affirmed well and truly to try the issue between the Sate and the defendant, according to the evidence and instructions by the court." CrR 6.6.

3

a verdict contrary to law, there was no remedy. Id. at 449. However, it concluded that a juror is "just as much bound by the laws of this territory as any other citizen. He acquires no right to disregard that law simply because he has taken an oath as juryman to aid in its administration." Id. at 451 (emphasis added).

In Leonard v. Territory, 2 Wash. Terr. 381, 399, 7 P. 872 (1885), the territorial court also considered a challenge to a to convict instruction that, in part, told the jury it "may" return a guilty verdict if the prosecution proved its case, but "must" acquit in the absence of such proof. However, this particular language was not the subject of the appellant's challenge and the court did not analyze or endorse this language. See id. at 399-401. The language demonstrates that, in prestatehood, the jury may have been instructed without the duty to convict. See id. at 399. But, this does not mean that the jury lacks a duty to uphold the law. The same opinion affirmed the decision in Hartigan that the jurors have a duty to follow the law as given them in the instructions. Id. at 395. In light of that duty, the language that the jury "may" convict merely parallels its true converse: that the jury may not convict without every element proved beyond a reasonable doubt. This does not erase the jury's duty to follow the law.

The jury has the ability to acquit against the evidence. But, it does not have the right to do so. See Meggyesy, 90 Wn. App. at 700. The court is not obligated to instruct the jury about that ability. Id. And, the court's lack of remedy against nullification is not because the jury lacks a duty to uphold the law. See Hartigan, 1 Wash. Terr. at 451. The court does not inquire into the jury's verdict out of respect for our judicial system. See State v. Balisok, 123 Wn.2d 114, 117-18, 866 P.2d 631 (1994)

4

(noting that the policy behind not inquiring is to promote stable and certain verdicts and allow the jury to freely discuss the evidence). This deference does not relieve the jury of its duty to obey the law as given to it and apply that law to the facts before it.

Here, the challenged instruction leaves for the jurors the role of evaluating the facts and applying the law as given to them, consistent with their oath. Thus, the instruction permits the jury to draw the ultimate conclusion of guilt or innocence, as the jury is required to do. See United States v. Gaudin, 515 U.S. 506, 514, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995).

This issue was settled by Meggyesy, and affirmed in Brown and Wilson. We reaffirm and uphold the to convict instruction given here: "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty." (Emphasis added.)

This is a correct statement of the law. Jurors have a duty to apply the law given to them. This instruction does not invade the province of the jury nor otherwise violate a defendant's right to a jury trial. The trial court does not err in giving the instruction when requested.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

## FACTS

Moore was charged with possession of a stolen vehicle. At his arraignment, Moore pleaded not guilty. Moore subsequently failed to appear at a pretrial hearing,

5

because he was at his attorney's office for an unrelated matter. As a result, the State charged Moore with bail jumping.

Ultimately, the State dismissed the charge for possession of a stolen vehicle, but continued to pursue the bail jumping case. Before trial, the State moved to exclude evidence about why Moore's underlying charge was dismissed. The prosecutor argued that the evidence was irrelevant to the bail jumping charge and thus would go to only jury nullification. Moore's counsel agreed that he would not comment on the underlying charge.

During direct examination, Moore's counsel asked him why he chose to go to trial, when bail jumping is a simple case for the State to prove. Moore answered that he agreed to go to trial because he did not "think it's right to go to court [or] have a court date for something that I know I'm not guilty of." The prosecutor objected to this testimony, and the court sustained the objection.

The jury found Moore guilty as charged. Moore appeals.

### DISCUSSION

#### I. Evidence of Underlying Charge

Moore argues that the trial court improperly prevented him from presenting evidence about the dismissal of his underlying charge. He also maintains that the court misled Moore about his ability to present his evidence to the jury.

At a pretrial motion hearing, Moore protested that his bail jumping charge should be dismissed after the underlying charges were dropped. The court responded that, "[b]ecause you have a due process right to a jury trial, you'll have an opportunity to

present your defense. . . . Your constitutional rights are all preserved. And the concerns that you have sounds like are concerns you are going to present to a jury next week." The State later filed a motion in limine seeking to exclude evidence of Moore's underlying charge, which the court granted on the basis of relevance.

A criminal defendant has the constitutional right to present evidence in his or her defense. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; State v. Weaville, 162 Wn. App. 801, 818, 256 P.3d 426 (2011). However, only relevant evidence is admissible. ER 402. To be relevant, evidence must have a tendency to prove or disprove the existence of a fact that is material to the outcome of the case. ER 401. There is no right to have irrelevant evidence admitted in one's defense. State v. Darden, 145 Wn.2d 612, 624, 41 P.3d 1189 (2002).

Moore was charged with bail jumping under RCW 9A.76.170(1). The elements of bail jumping are: (1) that the defendant was held for, charged with, or convicted of a certain crime; (2) that the defendant had knowledge of the requirement to appear at a subsequent court date; and (3) that the defendant failed to appear. State v. Downing, 122 Wn. App. 185, 192, 93 P.3d 900 (2004).

The evidence that Moore wished to present does not affect the jury's consideration of the elements of bail jumping. Nor did it pertain to a valid defense. The court acknowledged this, stating that the State's decision not to pursue the underlying charges "doesn't have a bearing on whether or not [Moore] still had an obligation to appear." The existence of Moore's underlying charge is relevant to prove the first element of bail jumping, but the fact that the charge was dropped—and the

circumstances thereof—has no bearing on the outcome of the case. The trial court properly excluded the evidence of the underlying charge's dismissal.

Furthermore, the court did not misinform Moore during the motion hearing. The court properly told him that he had a right to present a defense and merely said that it "sounds like" Moore will present evidence of his underlying charge at trial.

II.    Ineffective Assistance of Counsel

Moore argues that he was denied effective assistance of counsel. This is so, he contends, because his attorney failed to object to the State's motion in limine seeking to exclude evidence of his underlying charge's dismissal.

To prevail on a claim of ineffective assistance of counsel based on a failure to object, the defendant must show: (1) the absence of a legitimate strategic or tactical reason for not objecting; (2) that the trial court would have sustained the objection if made; and (3) the result of the trial would have differed if the evidence had not been admitted. State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

When the prosecutor made her motion in limine, she noted that the evidence was irrelevant and that it was inappropriate to elicit testimony that would go to only jury nullification. Moore's counsel declined to object, stating, "I have no intention of trying to cause a mistrial, so I will not be commenting on the underlying charge." This was a tactical decision not to fight for evidence that could potentially result in an error at trial, especially where the evidence is irrelevant. Moreover, counsel is not ineffective for refusing to advocate for a position that is unsupported by the law. Indeed, the refusal to do so is consistent with a lawyer's ethical obligations. See RPC 3.1.

8

Furthermore, the fact that the evidence was irrelevant indicates that the trial court would not have sustained the objection had counsel made one. The court's recognition that the evidence had no bearing on the bail jumping charges suggests this as well. Moore was not deprived his right to effective assistance of counsel.

III. Prosecutorial Vindictiveness

Moore contends that the prosecutor improperly charged him with bail jumping after realizing that there was insufficient evidence for the underlying crime of possession of a stolen vehicle. Moore argues that this constituted prosecutorial vindictiveness.

Prosecutorial vindictiveness is the intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right. State v. Lee, 69 Wn. App. 31, 35, 847 P.2d 25 (1993). Admittedly, bail jumping with a class B or C felony is a more serious crime than possession of a stolen vehicle. See RCW 9.94A.515. But, the prosecution did not file the bail jumping charge as a result of Moore's lawful exercise of a procedural right. Rather, the prosecution filed the bail jumping charge after Moore failed to appear at his hearing. This did not constitute prosecutorial vindictiveness.

IV. Sentencing

Moore argues that he was unfairly sentenced. The general rule in Washington is that a trial court must impose a sentence within the standard range unless it finds substantial and compelling reasons to justify a departure. State v. Smith, 82 Wn. App. 153, 160-61, 916 P.2d 960 (1996). Moore was convicted of bail jumping under RCW 9A.76.170 with a class C felony. His offender score is nine. The standard sentencing range under these circumstances is 51-68 months. RCW 9.94A.510; RCW 9.94A.515.

At sentencing, Moore requested an exceptional sentence downward, arguing that it was unjust to impose a five year sentence for missing a court date. The court considered Moore's request for an exceptionally low sentence, but did not find a sufficient basis to impose it. Instead, it imposed a sentence of 51 months, the lowest sentence in the standard range.

A sentence within the standard range shall not be appealed. RCW 9.94A.585(1). There are exceptions to this rule. For example, a defendant whose sentence is within the standard range may appeal upon showing that the sentencing court failed to follow some specific procedure required by the Sentencing Reform Act of 1981, ch. 9.94A RCW. State v. Mail, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). Alternatively, a defendant may make a constitutional challenge to a standard range sentence. Id. Moore makes neither argument here. Moore may not appeal his sentence.

V.    Absence From Previous Hearing

Moore's final statement of additional grounds addresses his absence from a hearing on June 22, 2012. The essence of Moore's argument seems to be that, because he was not punished for that absence, he should not have been punished for the absence that ultimately led to his conviction. The record does not contain evidence pertaining to the June 22 hearing. Because his argument is not supported by evidence in the record, we cannot review it. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008); see also RAP 10.10(c).

10

The to convict instruction at Moore's trial was proper. Moore does not demonstrate evidentiary error, ineffective assistance of counsel, or prosecutorial vindictiveness, and he may not appeal his sentence. We affirm.

WE CONCUR: