IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30734-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GREGORIO LUNA LUNA, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Gregorio Luna Luna challenges his conviction for first degree

aggravated murder in the stabbing death of his ex-wife, primarily challenging the trial

court's decision requiring him to provide a deoxyribonucleic acid (DNA) swab. We

affirm.

FACTS

At arraignment on the original charge of first degree murder, the State sought a

DNA swab in accordance with CrR 4.7(b)(2)(vi).[1] Defense counsel objected to the

request, and the prosecutor supplemented the affidavit of probable cause with the

testimony of Detective Scott Warren.

---

[1] The rule provides in part that the court may require the defendant to "permit the taking of samples of or from the defendant's blood, hair, or other materials of the defendant's body."

Detective Warren testified that police had recovered blood samples belonging to the suspect from two locations. The affidavit of probable cause established that Mr. Luna Luna had been involved in altercations with first the victim and then, as he tried to flee, a man at the scene. The altercations resulted in injuries that bled. The only question asked by defense counsel was whether the blood samples had been tested to see if they contained "usable DNA." They had not been tested.

The court granted the motion and a swab was eventually collected. Mr. Luna Luna's DNA matched the DNA obtained from the two locations, including DNA found on the handle of the knife used to kill the victim. The charge ultimately was amended to a single count of first degree murder with aggravating circumstances and an included offense of second degree murder.

After lengthy delay, the matter was tried to a jury. The jury found Mr. Luna Luna guilty of aggravated first degree murder. The trial court subsequently imposed the mandatory sentence of life imprisonment. Mr. Luna Luna then timely filed a notice of appeal to this court.

ANALYSIS

The sole issue[2] we will address in this opinion is the contention that the trial court erred in authorizing the DNA swab. The issue as argued to the trial court was whether or not the blood samples recovered at the scene contained DNA. On appeal, Mr. Luna Luna also argues that the State failed to show that the samples were blood. Both claims are without merit.

Cheek swabs are searches and therefore implicate attendant state and federal constitutional protections. *State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010). Consequently, warrantless cheek swabs are per se unreasonable under both constitutions. *Id.*

Criminal Rule 4.7(b)(2)(vi) creates a limited exception to this warrant requirement by permitting the State to take bodily material where the following requirements are met:

> A CrR 4.7(b)(2)(vi) order must be entered by a neutral and detached magistrate; must describe the place to be searched and items to be seized; and must be supported by probable cause based on oath or affirmation; and

---

[2] Counsel presents a second issue concerning the "duty to convict" language of the defense-proposed elements instruction. Subsequent to the filing of appellant's brief, this court rejected this argument, concluding that the failure to challenge the instruction precludes consideration of the issue on appeal. *State v. Wilson*, 176 Wn. App. 147, 307 P.3d 823 (2013). We thus will not further address that claim. Mr. Luna Luna also filed a Statement of Additional Grounds that raises an argument that the charging document needed to define the word "premeditation." He presents no relevant authority in support of that argument and we will not consider it.

there must be a *clear indication* that the desired evidence will be found, the method of intrusion must be reasonable, and the intrusion must be performed in a reasonable manner.

*Garcia-Salgado*, 170 Wn.2d at 186 (emphasis added). This court reviews legal determinations of whether qualifying information as a whole amounts to probable cause de novo. *State v. Gregory*, 158 Wn.2d 759, 822, 147 P.3d 1201 (2006).

Here the State was granted permission to obtain a DNA sample from Mr. Luna Luna's cheek under the authority of CrR 4.7(b)(2)(vi). Mr. Luna Luna concedes that all required conditions are met except that there was no clear indication that the desired evidence would be found. He bases this contention on the fact that the State did no presumptive testing on any substances found at the scene in order to ensure a DNA match could be made. He relies on factual distinctions between the case at bar and *Gregory* to support his argument. *Gregory*, 158 Wn.2d at 777.

In *Gregory*, the court upheld a CrR 4.7 search that intruded into the body. The State requested the order to obtain the defendant's DNA so that it could be compared to DNA discovered in a rape kit examination of the victim. *Id.* at 820.

Mr. Luna Luna assigns significance to the fact that in *Gregory* the State had an existing DNA profile from the victim prior to its application for a CrR 4.7 order. Accordingly, he argues that the court in *Gregory* determined that such evidence is necessary to fulfill the "clear indication" requirement.

4

*Gregory* does not support that argument. There the court merely found that the evidence available to the trial court was sufficient to fulfill the "clear indication" requirement; the court did not articulate a minimum standard for CrR 4.7 applications. *Id.* at 825. Thus, no authority requires presumptive testing of evidence to ensure that a DNA profile exists[3] prior to issuing a CrR 4.7(2)(b)(vi) order.

Notwithstanding the lack of presumptive testing, the trial court did have evidence to support a clear indication that a DNA match could be made. The motion was supported by a qualified officer who testified that the police had obtained samples of what appeared to be blood from the crime scene and that witnesses saw Mr. Luna Luna bleeding from an injury in the same location. Thus, the court reasonably believed that a DNA swab would yield evidence linking Mr. Luna Luna to the crime.

Accordingly, the trial court did not err in directing the defendant to provide the DNA swab. The conviction is affirmed.

---

[3] To the extent that Mr. Luna Luna argues that there also needed to be a showing that the samples were blood, we reject the argument. The officer reported that Mr. Luna Luna was bleeding at the scene and there is no evidence that human blood exists that does not contain DNA. Whether or not a sample is of sufficient quality to yield DNA results is a separate question apart from the issue of whether probable cause exists to believe that Mr. Luna Luna was the source of the blood samples.

No. 30734-4-III
*State v. Luna Luna*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

6